## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

MAJED SUBH,                          :
                                     :
                Plaintiff,           :
                                     :
    v.                               :     C.A. No. 08-410-SLR-LPS
                                     :
WAL-MART STORES INC. and             :
RUTH MCPHERSON,                      :
                                     :
                Defendants.          :

### REPORT AND RECOMMENDATION
### ON MOTION FOR SUMMARY JUDGMENT

On July 7, 2008, the plaintiff, Majed Subh ("Subh" or "Plaintiff"), filed the present

employment discrimination lawsuit ("*Subh II*") against Defendant Wal-Mart Stores Inc.[1] ("Wal-

Mart") alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, *et. seq.,* as well as defamation. (Docket Item ("D.I.") 1) Subh's

Complaint (the "Complaint") also names Ruth McPherson ("McPherson") as a defendant,

alleging claims of intentional infliction of emotional distress and defamation. (*Id.*) For these

alleged violations of federal and state law, Subh seeks compensatory and punitive damages and

other associated costs and relief. (*Id.*) The Complaint incorporates the allegations contained in

the charges of discrimination Subh filed with the Equal Employment Opportunity Commission

---

[1]Defendants advise that the appropriate company defendant is actually Wal-Mart Stores
East, LP, which is the operating entity for Store #5436 in Wilmington, Delaware and Store #5450
in Northeast, Maryland, where Plaintiff was employed. (D.I. 32 at 1) For purposes of this
Report and Recommendation, I will refer simply to "Wal-Mart."

("EEOC"). (*See id.* & Ex. A; D.I. 36 at B125)[2]

Pending before the Court is the Motion for Summary Judgment filed by Defendants Wal-Mart and McPherson ("Summary Judgment Motion"). (D.I. 31) For the reasons that follow, I recommend that Defendants' Summary Judgment Motion be granted with respect to all of Plaintiff's claims.

## BACKGROUND[3]

Plaintiff's Complaint recites a litany of events and alleged constitutional and other violations. Further relevant background has been previously set forth in a related case, styled *Subh v. Wal-Mart Stores, Inc.*, C.A. No. 07-479-SLR-LPS ("*Subh I*").[4]

Subh worked as a photo center technician in Wal-Mart Store #5436 in Wilmington, Delaware from December 20, 2005 – just before its January 2006 opening – until March 3, 2007, when he transferred to Wal-Mart Store #5450 in Northeast, Maryland. (*Subh I* D.I. 57 at 2 & n.5) Shortly thereafter, on April 19, 2007, Wal-Mart terminated Subh's employment for gross misconduct, after he allegedly physically threatened McPherson, the co-manager back at Store

---

[2]Plaintiff filed a Charge of Discrimination with the Maryland Commission on Human Relations and the EEOC on June 4, 2007. (D.I. 36 at B125) These charges were ultimately dismissed by the EEOC because "[b]ased upon its investigation, the EEOC [was] unable to conclude that the information obtained establishe[d] violations of the statutes." (D.I. 1 Ex. A)

[3]The Court has gleaned the following factual background from the parties' summary judgment filings. Where there are disputes of fact, all reasonable inferences are drawn in Plaintiff's favor. As is evident from my recommendation to grant summary judgment in favor of Defendants, however, I do not believe there are any genuine issues of material fact.

[4]See, for example, my March 31, 2009 Report and Recommendation ("R&R") (*Subh I* D.I. 57) and the Court's September 30, 2009 Memorandum Order (*Subh I* D.I. 61).

#5436. (*Id.* at 2-3 n.5) As I explained in my previous R&R, although Subh and Wal-Mart addressed Plaintiff's allegations surrounding his transfer to Store #5450 and eventual dismissal in their briefs in *Subh I*, these events were neither alleged in the complaint in that matter, nor in the discrimination charges Subh filed with the Delaware Department of Labor ("DDOL") or EEOC; thus, they were not part of *Subh I*. (*See id.*) This second lawsuit, instituted against Wal-Mart *and* Ruth McPherson, largely concerns the events that allegedly led to Subh's transfer and termination. Therefore, I will address the transfer and dismissal-related allegations below.

At the outset it bears noting that, to the extent Plaintiff's instant complaints of discrimination based upon race or national origin, as well as retaliation, harassment, and hostile work environment, overlap with the complaints which formed the basis of his lawsuit in *Subh I* – and it appears that they do, *compare Subh I* D.I. 3 & 52 *with Subh II* D.I. 1 & 35 – I will not address those claims. In *Subh I*, judgment has been entered in favor of Wal-Mart on all claims asserted there. (*Subh I* D.I. 62)

## Subh's Allegations Of Discrimination

Subh's Complaint recites:

Wal-Mart has engaged in unlawful employment practices in violation of Title VII because of Mr. Subh's national origin, including, but not limited to, perpetuating a hostile work environment, subjecting Mr. Subh to unlawful national origin discrimination and harassment, subjecting Mr. Subh to more onerous working conditions after he complained about the discrimination and harassment, and terminating Mr. Subh's employment in retaliation for opposing the discrimination, harassment, and hostile work environment.

(D.I. 1 at ¶28) Subh contends that the discrimination against him was based upon national origin as well as race. (*Id.* at ¶31) Subh explains that the "continuing discrimination, hostile work environment, and retaliation" to which he was subject compelled him to file several Charges of

3

Discrimination with the EEOC and to seek a transfer from the Delaware store to a Maryland

Wal-Mart store, a transfer to which Wal-Mart refused to agree "unless [Subh] agreed to 'forget'

about the discrimination and retaliation against him" and only after Subh's counsel intervened.

(*Id.* at ¶¶19-21)

## Wal-Mart's Contentions Regarding Alleged Discrimination

As discussed below, Wal-Mart responds that Plaintiff voluntarily requested a transfer.

Wal-Mart further contends that Plaintiff's claim that his termination was motivated by his race or

national origin fails as a matter of law because: (1) he cannot meet his prima facie burden;

(2) Wal-Mart terminated him for an objectively legitimate, non-discriminatory reason; and

(3) there is no evidence that Wal-Mart's proffered reason for Subh's termination was pretextual.

(D.I. 32)

## Subh's Allegations Of Retaliation

According to Subh, subsequent to his transfer to Maryland:

> Wal-Mart terminated Mr. Subh's employment in retaliation for his complaints of
> discrimination. Specifically, Ruth McPherson, acting both individually and in her
> capacity as Wal-Mart's agent, caused Mr. Subh to be arrested on allegations she
> knew to be false and without probable cause. Ms. McPherson's actions were
> intentional, extreme, and outrageous, and for a purpose other than bringing Mr.
> Subh to justice.

(D.I. 1 at ¶¶22-23) Subh adds that "[b]ecause of Ms. McPherson's false allegations, Mr. Subh

was arrested while at work, and held in prison for several days pending extradition from

Maryland to Delaware." (*Id.* at ¶ 24) He concludes that "Wal-Mart's reasons for its termination

of Mr. Subh's employment are pretext for its discrimination and retaliation" and that

"McPherson's actions were willful, malicious, and in contravention of law." (*Id.* at ¶¶ 25-26)

4

## Wal-Mart's Response To Retaliation Contentions

As discussed further below, Wal-Mart submits that Subh suffered no retaliation, and that

his retaliation claim must fail because he can produce no evidence showing a genuine issue for

trial regarding a causal connection between his protected activity – i.e., his prior complaints of

discrimination – and Wal-Mart's termination of his employment. (D.I. 32)

## Harassment And Hostile Work Environment

Subh's Complaint references that during his employment with Wal-Mart he was generally

subjected to "harassment" and a "hostile work environment." (D.I. 1 at ¶¶17, 19, 28 & 31)

## Wal-Mart's Response To Contentions Regarding
## Alleged Harassment And Hostile Work Environment

Wal-Mart responds that "[a]ll of Plaintiff's claims of race and national origin

discrimination, including his claims of harassment and hostile work environment, fail because

Plaintiff cannot establish that his termination arose under circumstances giving rise to an

inference of discrimination. Nor can he establish that Wal-Mart's legitimate reason for its

decision to terminate his employment is a pretext." (D.I. 37 at 5)

## Subh Files Third Charge Of Discrimination With The
## EEOC Based On Discrimination And Retaliation[5]

On June 4, 2007, Plaintiff filed a third Charge of Discrimination with the Maryland

Commission on Human Relations and the EEOC, identified as Charge No. 531-2007-01849

(hereinafter "Charge"). (D.I. 36 at B125) The Charge form includes boxes to identify what the

---

[5]Subh filed his first two charges of discrimination with both the DDOL and the EEOC on
June 14, 2006 and January 16, 2007, respectively. Plaintiff's first and second charges of
discrimination formed the basis of his complaint in *Subh I*, and, thus, those charges and their
disposition were previously addressed in my R&R in that case. (*Subh I* D.I. 57)

discrimination is based upon: race, color, sex, religion, national origin, retaliation, age, disability,

or other. Plaintiff checked the boxes for "national origin" and "retaliation." (*Id.*) The Charge

recites:

> I.    On December 20, 2005, I was hired by [Wal-Mart] as a photo tech at the Delaware location. On March 3, 2007, I was transferred to the above location. On April 13, 2007, I confronted the co-store manager at the Delaware location due to the treatment and hostile work environment I was subjected to while working at the Delaware store. I was loud but did not threaten the co-store manager. Later that day, while at work at the above location, I was arrested by the state police for alleged terroristic threats. I was charged with threatening behavior, criminal trespassing and menacing. I was in jail for five days. On April 19, 2007, I was terminated. On May 17, 2007, the marketing manager informed me I was banned from going into any Wal-Mart store. On May 21, 2007, I was told by the divisional executive chief officer that the termination was a final decision.
>
> II.   I was informed that I was terminated for gross misconduct.
>
> III.  I believe I was subjected to severe discipline and discharged because of my national origin (Middle Eastern) in violation of Title VII of the Civil Rights Act of 1964, as amended, and retaliated against for filing previous charges of discrimination and complaining about harassment in violation of Section 704(a) of Title VII.

(*Id.*)

After reviewing Subh's Charge, the EEOC concluded that "[b]ased upon its investigation,

[it was] unable to conclude that the information obtained establishe[d] violations of the statutes."

(D.I. 1 Ex. A) The EEOC issued its Dismissal and Right to Sue Notice on April 11, 2008. (*Id.*)

## LEGAL STANDARDS

A grant of summary judgment is appropriate only where "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

6

as a matter of law." Federal Rule of Civil Procedure 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

7

## DISCUSSION

### There Is A General Lack Of Admissible Evidence Supporting Plaintiff's Claims

Similar to the arguments advanced in *Subh I*, Defendants move for summary judgment

because Subh has failed to offer sufficient admissible evidence in support of his Title VII claims,

and, accordingly, there are no genuine issues of material fact, necessitating judgment in favor of

the Defendants. Once again, I agree.

As stated previously, to the extent Plaintiff's complaints of discrimination based upon

race or national origin, as well as retaliation, harassment, and hostile work environment, overlap

with Plaintiff's complaints in *Subh I*, I will not address those contentions here – judgment has

been entered on those matters for Defendants.

To the extent, however, Plaintiff has attempted to supply additional facts and arguments

with respect to his claims regarding his transfer or unlawful discharge, I will address those here.

As in *Subh I*, however, nearly the only evidence Subh offers in support of his claims consists of

his pleadings and various attachments, including transcript excerpts from his own deposition

testimony. None of these materials, however, provides a sufficient basis from which a

reasonable factfinder might find a violation of his rights. Subh's own uncorroborated accounts

that wrongdoing occurred, without any admissible evidence in support of those claims, are not

sufficient to establish a genuine issue of material fact and defeat the Summary Judgment Motion.

*See, e.g., Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 414 (3d Cir. 1999) (deeming

unsupported allegations of discrimination based solely on plaintiff's personal beliefs to be

irrelevant); *Longmire v. Wyser-Pratte*, 2007 WL 2584662, at *11 (S.D.N.Y. Sept. 6, 2007)

(granting summary judgment on hostile work environment claim against plaintiff, who "relie[d]

8

exclusively on his own conclusory allegations – which [were] wholly and uniformly uncorroborated"); *Shramban v. Aetna*, 262 F. Supp. 2d 531, 536 (E.D. Pa. 2003) (holding that plaintiff failed to produce enough evidence beyond her allegations and deposition testimony to create a sufficient issue of fact to be resolved by a jury), *aff'd*, 115 Fed. Appx. 578 (3d Cir. 2004); *see also generally Arnold Pontiac-GMC, Inc. v. Budd Baer, Inc.,* 826 F.2d 1335, 1339 (3d Cir. 1987) ("Summary judgment, of course, looks only to admissible evidence.").

Thus, while Plaintiff's deposition testimony, on issues on which he is competent to testify, is admissible evidence in support of portions of his claim, here – for reasons I will discuss below – it is insufficient to meet Plaintiff's burden to avoid summary judgment. Moreover, the other evidence Plaintiff has offered in support of his contentions is inadequate. Plaintiff needs to adduce sufficient evidence from which a reasonable factfinder could return a verdict for him, but he has failed to do so.

## **Exhaustion Of Administrative Remedies**

Title VII requires exhaustion of administrative remedies prior to filing suit in federal court. *See* 42 U.S.C. § 2000e-5(e)(1); *McDonnell Douglas*, 411 U.S. at 798. "A Title VII plaintiff in a 'deferral state' such as Delaware must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful conduct." *Lacy v. National R.R. Passenger Corp.*, 254 Fed. Appx. 934, 936 (3d Cir. 2007), *cert. denied*, --- U.S. ---, 129 S.Ct. 623, --- L.Ed.2d --- (2008); *see also E.E.O.C. v. R&R Ventures*, 244 F.3d 334, 338 n.* (4th Cir. 2001) ("In a deferral state such as Maryland, a charge is timely if it is filed with the Commission within 300 days of the last alleged act of discrimination."). The purpose of this requirement is to provide the EEOC the chance to investigate, mediate, and take remedial action with respect to the claimed

9

discriminatory event. *See Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976). The scope of a civil complaint in federal court, once a right-to-sue letter is issued by the EEOC, is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of a charge of discrimination, regardless of the actual scope of the EEOC investigation." *Tillman v. Pepsi Bottling Group, Inc.*, 538 F. Supp. 2d 754, 778 (D. Del. 2008) (internal quotation marks omitted). Moreover, "[t]he relevant test in determining whether [Plaintiff] was required to exhaust [his] administrative remedies . . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). Otherwise, the claim is barred. However, "[c]ourts have allowed claims not specifically mentioned in the EEOC charge where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint." *Tillman,* 538 F. Supp. 2d at 778; *see also Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358-59 (3d Cir. 1984) (noting "sound and established policy that procedural technicalities should not be used to prevent Title VII claims from being decided on their merits").

Here, it is undisputed that Subh exhausted his administrative remedies with respect to his claims of racial and national origin discrimination and retaliation, including his claims of harassment and hostile work environment generally. Thus, these claims are properly before this Court.

## **Discrimination On The Basis Of Race And National Origin**

The Court's role in evaluating a motion for summary judgment in a discrimination case is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the

10

light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

Title VII prohibits an employer from discriminating against any individual on the basis of "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Plaintiff does not distinguish between his race and national origin claims and relies upon the same set of facts in support of both.  He claims that his discharge from Wal-Mart was motivated by the fact that he is of Middle Eastern descent.  (D.I. 36 at B125)  Thus, to prevail on his discrimination claims, Subh must show that Wal-Mart intentionally discriminated against him on the basis of his race or national origin.

"A plaintiff may prove national origin or race discrimination by direct evidence as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989), or indirectly through the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)."  *Shah v. Bank of America*, 2009 WL 415619, at *5 (D. Del. Feb. 18, 2009).  "Direct evidence is evidence sufficient to allow the jury to find that the decisionmakers placed substantial negative reliance on [race or national origin] in reaching their decision."  *Id.* (internal quotation marks omitted).  During his deposition, Plaintiff testified to a litany of incidents and complaints in an attempt to support his claim.  But Plaintiff has no direct evidence of discriminatory animus or motive.

I next turn to the *McDonnell Douglas* burden-shifting framework to examine whether Subh can prove intentional discrimination by inference.  *See* 411 U.S. at 802; *see also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252 (1981).  Under this framework, a

11

plaintiff must establish a prima facie case of discrimination by showing that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the circumstances of the adverse employment action give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. *See McDonnell Douglas*, 411 U.S. at 802; *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). If the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant, who must "articulate some legitimate, nondiscriminatory reason" for its treatment of the plaintiff. *McDonnell Douglas*, 411 U.S. at 802; *Fuentes*, 32 F.3d at 763. If the defendant produces a sufficient reason for its actions, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the employer's rationale is pretextual. *See McDonnell Douglas*, 411 U.S. at 804; *Fuentes*, 32 F.3d at 763. It bears emphasis though that "throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination *always* rests with the plaintiff." *Fuentes*, 32 F.3d at 763 (emphasis added).

Therefore, once the defendant has articulated a nondiscriminatory reason for its actions, the plaintiff must point to *some* evidence, direct or circumstantial, that the defendant's proffered reasons are merely a pretext for discrimination. *See Fuentes*, 32 F.3d at 763-64. That is, the plaintiff must point to some evidence from which the "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered

non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes*, 32 F.3d at 764 (internal citations omitted). Hence, to make a sufficient showing of pretext, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's reason that "a reasonable factfinder *could* rationally find them unworthy of credence." *Id.* at 765 (internal quotation marks omitted).

Here, Subh has satisfied the first two prongs of the *McDonnell Douglas* framework: he has offered evidence that he belongs to protected racial or national origin classes and that he suffered adverse employment action, i.e., discharge.[6] But I recommend that Defendants' summary judgment motion be granted with respect to Subh's race and national origin discrimination claims because Subh has failed to make even a prima facie showing on the third prong: whether the "circumstances of the adverse employment action give rise to an inference of discrimination." I conclude that Subh has produced no evidence, either direct or circumstantial, supporting his claim that the actions taken with respect to his employment with Wal-Mart occurred under circumstances that give rise to an inference that he suffered from discrimination motivated by racial animus or animus based on his national origin.

Subh failed to respond to the Summary Judgment Motion with evidence from which a reasonable factfinder could conclude that employees outside the protected class were treated more favorably than him. It is Subh's – not Wal-Mart's – burden to identify comparators. *See Burdine*, 450 U.S. at 258-59 ("McDonnell Douglas teaches that it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally."). Subh has failed to do so. That is, Subh identified no similarly-situated individuals of non-Middle Eastern descent who

[6]The details of Subh's termination are discussed further *infra*.

13

were treated differently and better than himself. The record does not show any other similarly-situated Wal-Mart associate having a confrontation with a store manager, as happened with Subh.

Because I conclude that Subh has failed to establish a prima facie case of discrimination based on race or national origin, I recommend that the Court grant Defendant's motion with respect to Subh's discrimination claim.[7]

While the above discussion only addresses Subh's termination, I will also briefly address Subh's transfer. Assuming, arguendo, Subh's requested transfer could constitute an adverse employment decision, there is nothing in the record from which a reasonable factfinder could conclude that Wal-Mart exhibited racial animus or animus based on national origin in responding to Subh's request for a transfer. I find in the record no direct or circumstantial evidence of discriminatory animus or motive. In addition, Subh has again failed to identify a similarly-situated associate who was treated differently than him.

By early February 2007, in the time frame when Subh requested a transfer, he was on the fourth step of the discipline process, which called for the termination of his employment.[8] (D.I.

---

[7]Even if I were to conclude that Subh had established a prima facie case of discrimination, Subh has presented no evidence that the nondiscriminatory reasons articulated by Wal-Mart in defense of Plaintiff's termination were a pretext for discrimination.

[8]It is undisputed that "Plaintiff [had previously] received three formal reprimands, or coachings, for (i) being disrespectful to a member of management, (ii) violating Wal-Mart's Break and Working Off the Clock policies, and (iii) engaging in an argument with a co-worker in the Photo Center." (D.I. 32 at 6; *see* D.I. 33 at A50-53.) Moreover,

> Wal-Mart's progressive procedure for disciplining employees is called the Coaching for Improvement Policy. (A38-42.) In general, the policy provides for a first level Verbal Coaching for an initial infraction, followed by a second-level Written Coaching for a subsequent infraction. The third level is referred to as a Decision-Making Day coaching, which provides the associate with a day off of work, with pay, for the associate to decide whether he or she will make the required improvements in his/her behavior or performance. (Id. at A39.) Termination is the fourth step of the process. (Id. at A40.)

14

32 at 6; *see* Coaching Policy, D.I. 33 at A40.) Although Wal-Mart policy prohibited transfer for employees with active coachings on file (D.I. 32 at 7; *see* Associate Transfer Policy, D.I. 33 at A32; Sharkey Aff., D.I. 33 at A1, ¶3; D.I. 36 at B180), Wal-Mart Human Resources Manager Shelley Sharkey approved the transfer Plaintiff sought (D.I. 32 at 7; *see also* Sharkey Aff., D.I. 33 at A1 ¶¶3-4; Subh Tr., D.I. 33 at 24-29, A96-97; D.I. 36 at B180). Subh requested a transfer to Store #5450 in Northeast, Maryland in order to have a "fresh start." (D.I. 32 at 4, 6-7; *see also* Coachings, D.I. 33 at A50-53; Charge, D.I. 33 at A19-20, A24-25; Subh Tr., D.I. 33 at 24-25, A-96 & 27, A97; Sharkey Aff., D.I. 33 at A1 ¶3; D.I. 36 at B180.) Subh specifically chose Store #5450 because its Photo Center had the same equipment as in Store #5436. (D.I. 32 at 7; Subh Tr., D.I. 33 at 39-40, A99; D.I. 35 at 14) Subh even chose the effective date of the transfer, March 3, 2007, so that he could properly calculate his state tax burden. (D.I. 32 at 7; *see also* Sharkey Aff., D.I. 33 at A1-2, ¶3; D.I. 36 at B180.) Again, there is nothing in this undisputed evidence that provides a basis for a reasonable factfinder to conclude that Subh's transfer resulted from animus based on race or national origin.

Accordingly, I recommend that the Court grant Wal-Mart's motion with respect to Subh's race and national origin discrimination claims.

## Hostile Work Environment and Harassment

Subh appears to allege that he was generally subject to a "hostile work environment" and "harassment." (*See* D.I. 1.) Five factors must be proven in order to establish the existence of an actionable hostile work environment under Title VII: (1) plaintiff suffered intentional discrimination because of his race, ethnicity, or national origin; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would

_____

(D.I. 32 at 6 n.7)

15

detrimentally affect a reasonable person in like circumstances; and (5) the existence of respondeat superior liability. *See Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also McLean v. Communications Construction Group, LLC*, 535 F. Supp. 2d 485, 489-90 (D. Del. Mar. 7, 2008) ("The determination of whether the quantity and quality of racial harassment has created a hostile work environment is made on a case-by-case basis after considering the totality of the circumstances. To state a Title VII claim premised on a hostile work environment, plaintiffs must demonstrate the following: (1) they suffered intentional harassment because of their race; (2) the harassment was severe or pervasive; (3) the harassment detrimentally affected plaintiffs; (4) the harassment would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability. A prima facie showing . . . contains both a subjective standard (that plaintiffs were in fact affected) and an objective standard (that a reasonable, similarly situated individual would have been affected.") (internal citations and footnote omitted).

Here, as discussed above, I have found that Subh has failed to establish a prima facie case of discrimination based on race or national origin. Therefore, he has failed to present a triable issue of fact with respect the first element of the prima facie case for a hostile work environment claim (and a claim that harassment has created a hostile work environment). Consequently, I recommend that the Court grant Defendants' Summary Judgment Motion on any such claims.

**Retaliation**

Section 704(a) of Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this [subchapter], or because he has made a charge, testified, assisted, or participated in any manner

16

in an investigation, proceeding or hearing under this [subchapter]." 42 U.S.C. § 2000e-3(a).

Title VII protects individuals who file claims of discrimination, or who otherwise oppose

discriminatory practices, from retaliation. *See Curay-Cramer v. Ursuline Acad. Of Wilmington,

Del., Inc.*, 450 F.3d 130, 134 (3d Cir. 2006). Retaliation in an employment context is analyzed

under the same burden-shifting rubric that is used for discrimination claims. *See Shellenberger

v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003); *Waddell v. Small Tube Products,

Inc.*, 799 F.2d 69, 73 (3d Cir. 1986).

To prevail on a retaliation claim under Title VII, a plaintiff must establish a prima facie

case, which requires the plaintiff to show that: "(1) [he] engaged in a protected activity under

Title VII; (2) the employer took an adverse action against [him]; and (3) there was a causal

connection between the employee's participation in the protected activity and the adverse

employment action." *Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315,

320 (3d Cir. 2008).

> If an employee establishes a prima facie case of retaliation, the burden shifts to the
> employer to advance a legitimate, non-retaliatory reason for its adverse
> employment action. The employer's burden at this stage is relatively light: it is
> satisfied if the defendant articulates any legitimate [reason] for the adverse
> employment action; the defendant need not prove that the articulated reason
> actually motivated the action. If the employer satisfies its burden, the plaintiff
> must be able to convince the fact finder both that the employer's proffered
> explanation was false, and that retaliation was the real reason for the adverse
> employment action. The plaintiff must prove that retaliatory animus played a role
> in the employer's decisionmaking process and that it had a determinative effect on
> the outcome of that process. The burden of proof remains at all times with the
> plaintiff.

*Miller v. Delaware Probation and Parole*, 41 Fed. Appx. 581, 584 (3d Cir. 2002) (internal

quotation marks and citations omitted). For summary judgment to be awarded, the defendant

must establish "the plaintiff's inability to raise a genuine issue of material fact as to either:

17

(1) one or more elements of the plaintiff's *prima facie* case or, (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation." *Id.* (internal quotation marks and citations omitted).

Wal-Mart concedes for purposes of summary judgment that Plaintiff can present evidence of the first two elements of his retaliation claim. However, Subh's retaliation claim fails because he cannot offer any evidence showing a genuine issue for trial regarding a causal connection between his protected activity – i.e., his prior complaints of discrimination – and Wal-Mart's termination of his employment. Wal-Mart terminated Subh because, six weeks after his transfer to the Maryland store, he returned to the Delaware store and aggressively confronted McPherson, thereby violating Wal-Mart's Workplace Violence Policy. (D.I. 32 at 4, 8-10; *see* Exit Interview, D.I. 33 at A59; Sharkey Aff., D.I. 33 at A1-3; D.I. 36 at B180; *see also* D.I. 36 at B125.)[9] Even on Plaintiff's own account of his confrontation with McPherson, he initiated a loud, aggressive confrontation – at a time he was dressed in a security guard uniform, and carrying a night stick, from another job – on the sales floor of the Delaware store, all in view or earshot of other associates and customers. (D.I. 32 at 15; *see also* D.I. 33, Subh Tr. 52-86, A102-111.) It is undisputed that, as a result of the incident, Plaintiff pled "no contest" to a charge of menacing and was sentenced to one year probation and ordered to have no contact with McPherson or Wal-Mart Stores #5436, #5450, or #2555. (D.I. 32 at 10; D.I. 33 at A56-58, A74-75; Subh Tr., D.I. 33 at 123, A114) There is simply no genuine dispute of fact as to why Wal-Mart terminated

---

[9]Wal-Mart has a Workplace Violence policy which prohibits, among other things, "veiled threats of harm," "intimidation," and "bringing . . . weapons of any kind onto company property." (D.I. 32 at 9; D.I. 33 at A46-49) Associates are warned that a violation of the policy will result in discipline, up to and including termination of employment. (D.I. 32 at 9; D.I. 33 at A46-49)

Subh: it was due to his confrontation with McPherson.

Even if he had made out a prima facie case, however, Wal-Mart has offered a legitimate, non-discriminatory reason for Subh's termination: his violation of its workplace violence policy. (D.I. 32 at 14; Workplace Violence Policy, D.I. 33 at A46; *see also* D.I. 33 at A3; D.I. 36 at B180.) Nothing in the record demonstrates a genuine issue of fact as to whether this was the actual reason for Subh's termination. As there is not evidence from which a reasonable factfinder could be convinced that this explanation for Subh's termination is false, and that a retaliatory motive played a role in Wal-Mart's decisionmaking process, Defendants should be granted summary judgment. *See Choe-Rively v. Vietnam Veterans of America Chapter 83*, 135 F. Supp. 2d 462, 474-75 (D. Del. 2001) (holding that plaintiff's unsupported speculation that employer acted with discriminatory animus is insufficient to withstand summary judgment).

Accordingly, I recommend that the Court grant Defendants' Summary Judgment Motion as it relates to Subh's claim of retaliation.

## State Law Claims

Counts III and IV of the Complaint allege McPherson intentionally inflicted emotional distress upon Subh, and that both McPherson and Wal-Mart defamed him. (D.I. 1) I recommend that Defendants be granted summary judgment on each of these state law claims.

### A.    Intentional Infliction of Emotional Distress

Subh alleges that "McPherson's conduct was intentional or reckless," and that "[h]er extreme and outrageous conduct was outside the bounds of decency and caused Mr. Subh severe emotional distress." (D.I. 1 at ¶34) Specifically, he alleges that McPherson "caused Mr. Subh to be arrested on allegations she knew to be false and without probable cause" and further that her "actions were intentional, extreme, and outrageous, and for a purpose other than bringing Mr.

Subh to justice." (*Id.* at ¶23)  Moreover, due to McPherson's "false allegations," Subh "was arrested while at work, and held in prison for several days pending extradition from Maryland to Delaware."  (*Id.* at ¶24)

Under Delaware law, "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  *Mattern v. Hudson*, 532 A.2d 85, 85 (Del. Super. Ct. 1987).  "[E]xtreme conduct" is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as . . . utterly intolerable in a civilized community."  *Id.* at 86.  To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show that the distress he suffered was "so severe that no reasonable man could be expected to endure it."  *Mandelaka v. Boyd*, 1993 WL 258798, at *1 (Del. Super. June 14, 1993) (internal quotation marks omitted).  Courts are to consider both intensity and duration in deciding whether the conduct has reached this level.  *See id.*

Here, the record is devoid of evidence from which a reasonable factfinder could make such a finding.  Plaintiff was arrested for: (1) disorderly conduct because he "intentionally create[d] a risk of public alarm to other persons by engaging in threatening behavior;" (2) criminal trespass because he "was repeatedly told to leave the premises of Wal-Mart and refused, after [] becoming disorderly threatening an employee;" and (3) menacing because he "grabbed a night stick on his belt when he made a threatening statement, 'I'll get you, you'll get yours. You'll see.'" (Criminal Cmplt., D.I. 33 at A56-57)  Plaintiff admits that he confronted McPherson and that he was wearing his night stick at the time.  (Subh Tr., D.I. 33 at 58-61, 67-69, A104, A106)  Plaintiff admits that he repeatedly turned around and continued yelling at

McPherson as he was led out of the store. (Subh Tr., D.I. 33 at 69-76, A106-08) Subh ultimately pled "no contest" to the menacing charge.

Plainly, the police had probable cause to arrest Subh. Furthermore, the undisputed evidence shows that McPherson did not call the police. These facts establish that no reasonable factfinder could conclude that McPherson took any action toward Subh that could be found to be extreme or outrageous.[10] I therefore recommend the grant of summary judgment in favor of McPherson as to this claim.

## B. Defamation

Plaintiff claims that McPherson, and hence Wal-Mart (given McPherson's position as a Wal-Mart co-manager), defamed him by falsely and maliciously accusing him of a crime. (D.I. 1 at ¶¶37-39) A claim for defamation under Delaware law requires establishment of the following five elements: "(1) defamatory communication; (2) publication; (3) the communication refers to the plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury." *Wright v. Pepsi Cola Co.*, 243 F. Supp. 2d 117, 124 (D. Del. 2003). An employer is only liable for defamatory statements of its employees if such statements were made within the scope of employment. *See Drainer v. O'Donnell,* 1995 WL 338700, at *4 (Del. Super. Ct. May 30, 1995).

"It is hornbook law that truth is an absolute defense to a defamation action." *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1155 (Del. 1981); *see also Sunstar Ventures, LLC v. Tigani,* 2009 WL 1231246, at *8 (Del. Super. Apr. 30, 2009) ("A statement of

---

[10]While the record contains a statement by a psychologist, Dr. Leland G. Orlov, that Subh "suffered serious emotional distress because of incidents at work" (D.I. 36 at B185-86), this statement does not constitute evidence that McPherson's conduct was the cause of such distress or that her conduct was outrageous.

21

fact is not defamatory if it is substantially true.") (internal quotation marks omitted). Here, as I have already recounted in connection with Subh's emotional distress claim, it is undisputed that Subh pled "no contest" to a charge of menacing. McPherson's recollection of the confrontation with Plaintiff is corroborated by all of the witnesses to the incident. (*See* Witness Statements, D.I. 33 at A4-10.) Even on Subh's own account of his confrontation with McPherson, McPherson's statements were at least "substantially true."

Accordingly, there is not evidence from which a reasonable factfinder could conclude that Defendants defamed Subh. I recommend that the Summary Judgment Motion be granted with respect to Subh's defamation claim.

## RECOMMENDED DISPOSITION

For the reasons set forth above, I recommend that Defendants' Motion for Summary Judgment be GRANTED with respect to Plaintiff's federal claims (Counts I and II) and state claims (Counts III and IV).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections **of no longer than ten (10) pages within fourteen (14) days after being served with a copy of this Report and Recommendation**. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 Fed. Appx. 924, 925 n.1 (3d Cir. 2006). **A party responding to objections may do so within fourteen (14) days after being served with a copy of objections; such response shall not exceed ten (10) pages. No further briefing shall be permitted with respect to objections**

**without leave of the Court.**

The parties are directed to the Court's Standing Order In Non-*Pro Se* Matters For

Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is

available on the Court's website, www.ded.uscourts.gov/StandingOrdersMain.htm.

Dated: November 19, 2009

Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE